IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARY SALLENGER, as the Administrator of the Estate of ANDREW B. SALLENGER, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SPRINGFIELD, a municipal corporation, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 03-3093<br>)<br>)<br>)<br>)<br>) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on eight Motions in Limine (d/e 126, 128, 130, 132, 134, 138, 141, & 144) filed by Plaintiff Mary Sallenger. The Motions are fully briefed and ripe for determination. The power to exclude evidence, pursuant to motions in limine, arises out of the Court's inherent authority to manage trials. Luce v. United States, 469 U.S. 38, 41 n. 4 (1984). The moving party has the burden of demonstrating that the evidence is inadmissible on any relevant ground. Plair v. E.J. Brach & Sons, Inc., 864 F.Supp. 67, 69 (N.D. Ill. 1994). The admissibility of some

1

proposed evidence cannot be determined outside the context of trial, and motions in limine pertaining to such evidence should be denied. Id. With these principles in mind, the Court addresses each individual Motion in detail below.

1. Plaintiff's First Motion in Limine to Bar Evidence of the Internal Investigation of Andrew Sallenger (d/e 126) (First Motion in Limine)

After Andrew Sallenger's death, various agencies made investigations into the altercation between Andrew Sallenger and three officers of the Springfield Police Department (SPD). Plaintiff's First Motion in Limine seeks to bar reference to or evidence of: (a) investigations by any authoritative agency, or lack thereof, together with their outcome, (b) statements made to the SPD internal investigators for purposes of determining whether the three officers should receive any form of punishment, and (c) statements made to any other investigating officer, unless the actual officer presents as a witness. Defendants object to the First Motion in Limine in its entirety.

Defendants first assert that Plaintiff's expert, Dr. Michael Lyman, relied upon information from investigative reports in forming his opinions. Thus, Defendants contend that this information is relevant to their cross-

2

examination of Dr. Lyman. The Court agrees. Statements which Dr. Lyman used to form the basis of his opinions can be brought out to show what information Dr. Lyman relied upon. Similarly, Defendants may inquire as to statements of which Dr. Lyman was aware but on which he elected not to rely. This information will not be admitted for the truth of the matter asserted, however.

The Court turns to the question of the blanket admissibility of evidence relating to investigations by any authoritative agency, or lack thereof, together with their outcome, including the decision by the Sangamon County State's Attorney's Office not to bring criminal charges against the three officers. Any probative value that this evidence may have is outweighed by the danger of unfair prejudice to Defendants if it were to be admitted. See Fed. R. Evid. 403. The fact that the three officers involved in the altercation were not prosecuted, reprimanded, punished or censured has no relevance to the instant case; further, in a criminal case the prosecutor has a higher burden of proof, and thus a decision not to prosecute is not probative of the issues in this case. Moreover, there is a substantial risk that such evidence would result in jury confusion or the possibility that the jury would base its decision on an improper basis. See

Thompson v. City of Chicago, 472 F.3d 444, 457-58 (7th Cir. 2006). Therefore, Plaintiff's First Motion in Limine is allowed in this respect.

Plaintiff also seeks to exclude, as hearsay, statements made to the SPD investigators by various family members of Andrew Sallenger. Plaintiff's request is allowed in part. The statements will be excluded unless Defendants can demonstrate, outside the presence of the jury, that some valid reason exists for their admission. The individual statements may, however, be used on cross-examination of the declarant.

Plaintiff asks the Court to bar statements made to investigators, that have been included in investigative reports, unless the investigator testifies. This request is allowed in part. Under Fed. R. Evid. 805, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule . . . ." Statements made to investigators who do not testify will be excluded unless Defendants can demonstrate, outside the presence of the jury, that the hearsay within hearsay is admissible. Moreover, even in the event that the author of an investigative report testifies, the Defendants must lay a foundation for admissibility prior to introducing any hearsay statements contained within the report. Thus, Plaintiff's First Motion in Limine is

4

allowed, in part, and denied, in part.

    2.    <u>Plaintiff's Second Motion in Limine Regarding Reference to Plaintiff's Pecuniary Status (d/e 128) (Second Motion in Limine)</u>

Plaintiff's Second Motion in Limine seeks to bar any evidence of or reference to: (a) a belief that this lawsuit was brought merely to recover money or that Plaintiff has a monetary motive other than to compensate Andrew Sallenger's family for losses suffered at the hands of the Defendants, (b) an insinuation that Plaintiff is money hungry, (c) photographs of the home at issue that are not relevant to the actions of Andrew Sallenger or the Defendants, and (d) the fact that Plaintiff may be poor or of limited means. Defendants have no objection to Plaintiff's requests as set forth in subsections (a), (b), and (d), and the Court allows Plaintiff's Motion as it relates to those subsections.

Defendants, however, object to Plaintiff's request as set forth in subsection (c). Defendants assert that they plan to introduce photographs of the exterior and interior of the home which accurately depict the condition of the scene at the time of the occurrence. Defendants contend that such photographs are necessary to enable the jury to fully understand the conditions faced by the officers when they arrived on the scene, to cross-

examine Plaintiff's expert, and possibly for impeachment purposes. The Court finds that Plaintiff has not shown that the relief sought in subsection (c) is necessary at this point in the proceeding, and Plaintiff's Motion is denied in this respect. The Court will not admit irrelevant photographs; however, the Court will rule on the admissibility of individual photographs at trial once a foundation has been laid and the exhibit has been offered into evidence. Plaintiff is granted leave to raise this issue again, if necessary, by stating specific objections to exhibits as they are proffered. Thus, Plaintiff's Second Motion in Limine is allowed, in part, and denied in part.

    3.    <u>Plaintiff's Third Motion in Limine (d/e 130)</u>

In her Third Motion in Limine, Plaintiff asks the Court to bar: (a) any evidence or reference to the effect that a finding of liability against Defendants would be paid with personal assets or would affect the Defendants' careers or families and (b) any evidence of or reference to the fact that Plaintiff may have asked for a greater sum of money than she actually expects to receive. Defendants have no objection to this request, and therefore, Plaintiff's Third Motion in Limine is allowed.

4. <u>Plaintiff's Fourth Motion in Limine (d/e 132)</u>

Plaintiff's Fourth Motion in Limine seeks to bar evidence or innuendo of illegal drug use by Andrew Sallenger. According to Plaintiff, Defendants have elicited information relating to Andrew Sallenger's use of marijuana. Plaintiff asserts, however, that there is no evidence or allegation that marijuana use contributed in any way to Andrew Sallenger's death, and the information, thus, is not relevant. Defendants object to the Fourth Motion in its entirety.

Plaintiff's Fourth Motion in Limine is allowed, in part, and denied, in part. If a witness saw Andrew Sallenger use illegal drugs on April 28, 2002, or April 30, 2002, he or she can testify to the observation. Additionally, a qualified medical witness may testify to the result of the autopsy of Andrew Sallenger, including the toxicology test results showing the presence of marijuana metabolites. Plaintiff's Fourth Motion in Limine is allowed in all other respects.

5. <u>Plaintiff's Fifth Motion in Limine -- Certain Facts Relating to Kimberly Nolan (d/e 134) (Fifth Motion in Limine)</u>

In her Fifth Motion in Limine, Plaintiff seeks to exclude evidence of or reference to certain facts relating to Kimberly Nolan, the sister of Andrew

Sallenger. These facts include: (1) evidence that Nolan has had past legal problems involving drugs and the Illinois Department of Children and Family Services (DCFS); (2) evidence that Nolan has been in and out of McFarland Hospital for medical treatment; (3) evidence that Nolan allowed her children to be around Andrew Sallenger despite knowing that Andrew Sallenger had, at some undefined point, smoked marijuana; (4) evidence that Nolan did not have a driver's license; (5) any reference indicating that Nolan "broke into" Mary Sallenger's home or that Nolan improperly took photos of Andrew Sallenger from Mary Sallenger's home; and (6) evidence that Nolan has lost or relinquished custody of her children at various times for various reasons. Defendants oppose Plaintiff's Fifth Motion in Limine in part.

Defendants do not object to the request to bar evidence of Nolan's mental health issues, her inadmissable criminal history, and the reasons why Nolan does not have a driver's license. Therefore, the Fifth Motion in Limine is allowed in these respects. Defendants assert that the custody issues and Nolan's decision to allow her children to be around Andrew Sallenger despite his marijuana use are relevant to Nolan's claim that she left the Sallenger residence with her children on April 30, 2002, not because

8

she was afraid of harm but because of custody issue concerns. The Court agrees. In the event Nolan testifies that she left the Sallenger residence with her children on April 30, 2002, so as to not jeopardize her custody of the children, Defendants may raise these issues on cross-examination. The Fifth Motion in Limine is denied in this respect. However, if Nolan does not so testify, the Court sees no relevance to evidence of the custody issues and Nolan's decision to allow her children to be around Andrew Sallenger despite his marijuana use.

Plaintiff also seeks to bar evidence of the fact that Nolan did not have a driver's license. The request is denied. The fact that Nolan did not have a driver's license is relevant to the explanation of the circumstances surrounding the 9-1-1 call that resulted in the police dispatch to the Sallenger home. Therefore, evidence that Nolan did not have a driver's license will be admitted, while the reasons behind her lack of a license are barred.

Finally, the Fifth Motion in Limine seeks to bar any reference indicating that Nolan "broke into" Mary Sallenger's home or that Nolan improperly took photos of Andrew Sallenger from Mary Sallenger's home. This request is denied, because the Court cannot determine the admissibility

9

of this evidence at this point. If Plaintiff presents proper evidence of damages for items of personal property allegedly stolen by the police, Nolan can be asked about the items. Before any such evidence is allowed, however, the Court will require an offer of proof, outside the presence of the jury, to ensure that the evidence is proper and not speculative. Moreover, Mary Sallenger cannot give speculative opinions on this issue. The Fifth Motion in Limine is allowed, in part, and denied, in part.

      6.    <u>Plaintiff's Amended Sixth Motion in Limine to Bar Any Reference to Taser Allegations (d/e 144) (Sixth Motion in Limine)</u>

In her Sixth Motion in Limine, Plaintiff seeks to bar evidence of or reference to the following: (1) responses from various lay witnesses when asked whether they believed a taser was used on Andrew Sallenger on the evening of April 30, 2002; (2) Mary Sallenger's response, when asked whether she knew what killed Andrew Sallenger, that a nurse friend told her that Andrew was killed by a "stun gun;" (3) responses from various lay witnesses when questioned regarding various marks and bruises on Andrew Sallenger; and (4) Mary Sallenger's statement that she was told that Bill Pittman had put medical tape on Andrew Sallenger. Defendants oppose the Sixth Motion in Limine in its entirety.

The Sixth Motion in Limine is denied. The parties, however, are granted leave to raise specific objections at trial. Without a context, the Court cannot determine how the challenged information will be used. Questions calling for expert opinions beyond a witness's qualifications will not be allowed. Questions calling for a hearsay response will not be allowed. Latitude will be given to counsel on cross-examination to bring out prior inconsistent statements and to show what experts used to formulate opinions.

    7.    <u>Plaintiff's Seventh Motion in Limine to Bar Reference to the 1995 Unlawful Restraint Incident (d/e 138) (Seventh Motion in Limine)</u>

Plaintiff's Seventh Motion in Limine asks the Court to bar any reference to a 1995 unlawful restraint incident involving Andrew Sallenger during which Andrew Sallenger allegedly held Barbara Ward and his two sons, Andrew and Aaron Ward, hostage at gunpoint for approximately six hours. Plaintiff asserts that this evidence is irrelevant to the liability stage of the trial and overly prejudicial during the damages phase. Defendants assert that the evidence is relevant on the issue of liability to rebut testimony of Andrew Sallenger's calm nature during psychotic episodes and during cross-examination of Plaintiff's expert, Dr. Lyman. Defendants

11

contend that the evidence is relevant on the question of damages because it tends to negate evidence of a close relationship between Andrew Sallenger and his two sons.

The Seventh Motion in Limine is allowed, in part, and denied, in part. The Court finds that evidence of the 1995 incident is not relevant at the liability stage and allows the Motion in this respect.  However, if Defendants believe that Plaintiff opens the door to this issue, Defendants may ask the Court in a side bar to revisit this ruling before cross-examination. As to damages, the nature of the relationship between Andrew Sallenger and his sons is at issue.  The evidence of the 1995 incident is relevant to that inquiry.  The matter has been bifurcated, and the Court will allow evidence relating to the 1995 incident during the damages phase because, at that point, the probative value of the evidence outweighs the danger of unfair prejudice to Plaintiff.

8. <u>Plaintiff's Eighth Motion in Limine (d/e 141)</u>

Plaintiff's Eighth Motion in Limine asks the Court to bar any evidence of or reference to the fact that Andrew Sallenger suffered from cardiomegahy, also known as an enlarged heart, and that his heart was larger than average, specifically almost two times the size of an average male heart.

Defendants oppose the Motion, asserting that this evidence is relevant to Dr. Harshbarger's opinion and the jury's determination as to whether Andrew Sallenger's death resulted from the officers' actions.

Plaintiff's Eighth Motion in Limine is denied. Dr. Harshbarger did not rule out cardiac arrhythmia based on the enlarged heart size as a cause of Andrew Sallenger's death. Defendants' Response to Plaintiff's Eighth Motion in Limine (d/e 146), Ex. 1, Deposition of Kent Harshbarger, M.D., p. 43-44. The evidence relating to Andrew Sallenger's enlarged heart is relevant and admissible.

THEREFORE, Plaintiff's Third Motion in Limine (d/e 130) is ALLOWED. Plaintiff's First Motion in Limine (d/e 126), Second Motion in Limine (d/e 128), Fourth Motion in Limine (d/e 132), Fifth Motion in Limine (d/e 134), and Seventh Motion in Limine (d/e 138) are ALLOWED, in part, and DENIED, in part, as set forth above. Plaintiff's Sixth Motion in Limine (d/e 144) and Eighth Motion in Limine (d/e 141) are DENIED. IT IS THEREFORE SO ORDERED.

ENTER:   September 4, 2007

   FOR THE COURT:

                            s/ Jeanne E. Scott
                         JEANNE E. SCOTT
                    UNITED STATES DISTRICT JUDGE